IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS ALLUMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　　Defendant. | Case No.: 13-cv-00807 JSC<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND (Dkt. No. 2)** |

Plaintiff Dennis Allums, proceeding pro se and *in forma pauperis*, brings a series of claims against the Department of Homeland Security ("DHS") relating to various forms of harassment Plaintiff allegedly suffered. (*See* Dkt. No. 1.) The Court previously granted Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 13), and the Court must now review his Complaint under 28 U.S.C. § 1915. Presently pending before the Court is Plaintiff's initial Complaint, in which he alleges "inappropriate interactions with women, minorities and children," violent abuse of policing power, destruction and theft of property, attempted and actual murder, entrapment, and various constitutional and civil rights violations. (Dkt. No. 1.) Because Plaintiff fails to allege a set of facts

1  supporting any of his claims against DHS, the Court DISMISSES his complaint with leave to
2  amend.[1]

## ALLEGATIONS

Although Plaintiff's Complaint appears to list twelve numbered counts, many of the counts repeat earlier allegations or reexamine the possible motives of actors without alleging additional factual information. The Complaint is thus best understood to contain just the first eight proposed claims.

The first, titled "Five Years of Inappropriate Interactions with Women, Minorities and Children," alleges that a federal agent under the code name "Steve" harassed Plaintiff by "show[ing] up out of no where [sic], often with a 'Bunny' or female companion with him and then proceed[ed] to buy nothing, eat ice cream and stare at Mr. Allums." (Dkt. No. 1 at 3.) Plaintiff alleges that the federal agent approached him and a female companion, who is not party to this suit, on May 28, 2012 at a Starbucks in Berkeley, California, and "as did many of the Agents [sic] before him, Proceed [sic] to disrespect her, stating that he was in the process of forming a new dating service commune for smart people . . . smiled and stated that that [sic] what they really needed was women; adding there are enough guys (referring to Mr. Allums) but no women for the guys." (*Id.*) The interaction, which Plaintiff describes as "another abusive Agent taking advantage of another minority female," ended when Plaintiff's female companion "with the zeal of a chicken that realizes that the restaurant has a back door, [] finishe[d] packing her bag, [told] him she'll check his website and vanishe[d] as if never there leaving 'Steve' with the 'gas' face." (*Id.* at 4.) Plaintiff additionally states, "dating women 'Bunnies' on duty is not an approved use of government funds." (*Id.* at 7.)

Plaintiff alleges more broadly in count one that although he has "intervened in over a hundred abuses by men, mostly white against women mostly of color for he was convinced no one else cared . . . federal agents have unassisted him and defended the criminals." (*Id.* at 8.) Plaintiff graphically describes several sexual assaults in which a male person who "was disturbed, like all the

---

[1] Although Plaintiff has not yet responded to the Court's notices to consent or decline the jurisdiction of the undersigned magistrate judge, the Ninth Circuit has stated that "a magistrate can . . . dismiss a complaint with leave to amend without approval by the court." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

others in the area and he was the same race and ethnicity as 90% of the assailants, and she was a minority like 90% of the victims" assaulted victims ranging from a thirteen year old African American female to a "Hispanic female (again, he did not know here [sic] either) who had a male at her side and appeared about to stick his protruded tongue somewhere." (*Id.* at 7.) Frustrated with "a conspiracy of non-caring" in which attacks have gone unnoticed in "a packed café," Plaintiff alleges that federal agents failed in their duties to protect the public. (*Id.*) Plaintiff claims that "to the federal agents, [Plaintiff] was evil, he was a whistleblower who was telling Americans of criminal events before they occurred. How dare he. THIS AS HE LEARNED, COULD NOT BE TOLERATED." (*Id.* at 8.)

Pursuant to his harassment claims on behalf of minority women and children, Plaintiff requests that "the crime ridden area that Mr. Allums was forced to abandoned [sic], be police[d] for the next ten years by the 500+ agents that still have nothing better to do." (*Id.* at 27.) Plaintiff alleges, "at it's [sic] basics, the Federal Agents were motivated by the enjoyment of criminality in that they took the side of the criminal in each and every instance, even to the cost of minorities, women and children." (*Id.* at 22.) Stating that "this criminality was only possible with the implementation of the [P]atriot [A]ct," Plaintiff alleges that "U.S. agents did respond inappropriately and vindictively, not against the criminals or suspects but against law-abiding citizen [sic] trying to protect another law-abiding citizen." (*Id.* at 20, 22.)

In his third numbered claim, related once in his original complaint and again at length in his Errata to the Complaint, Plaintiff states a two-part claim against NBC Universal Studios and the federal government based on an alleged violation of his copyright to an original work. (*Id.* at 12.) First, Plaintiff claims that NBC Universal Studios illegally stole Plaintiff's life story included in the original screenplay entitled "On A Hidden Field," constituting "a new kind of neo-slavery that is intellectual and creative in nature." (Dkt. No. 7 at 15.) Plaintiff further alleges that federal "agents did assist Universal/NBC with the theft and did provide cover/protection for this unethical, immoral, and possibly illegal dealings . . . it is also allege[d] that not only were agents aware that the story was Mr. Allums [sic], they had evidence to prove it as such to a mathematical certainty of for [sic] greater than 17 billion to one, thus odds approaching certainty." (Dkt. No. 1 at 12.)

3

In his second, third, fifth, and sixth claims, Plaintiff alleges a series of attempts by federal agents to entrap him into committing criminal acts. It appears that Plaintiff did not commit any of these acts. Plaintiff claims that "despite knowing of Mr. Allums [sic] 10 years pledge in honor of his slain friend to not entertain, socialize or date anyone of any sex or race, agents routinely and with malice, repeatedly try to entrap Mr. Allums with any and all types of situations involving females of all ages, all of which attempts were non successful and doomed to fail at inception." (*Id.* at 9.) Later in his complaint, Plaintiff, perhaps referring to the same agents, claims that the government "did engage in a Six [sic] year documented attempt to frame Mr. Allums for sexual misconduct despite knowing Mr. Allums purposely did not date or engage in any type of relationship from august [sic] 2002 to may [sic] of 2012, nor do any of the hundreds of U.S. agents have any evidence, via pictures or personal witness to the contradiction of this statement." (*Id.* at 18.)

Plaintiff alleges that when he exposed "a plot against a billionaire African American Media Mogul in 2008, no action was taken to protect her, but action was taken to silence Mr. Allums as agent 'Mike' was sent to frame/entrap Mr. Allums, stating that he had problems with women and minorities eventually taking disgusting actions against high school girls, licking his lips at them three times in a row." (*Id.* at 12.) Related to an alleged attempt on his life, Plaintiff contends that an agent "did willfully and with Malice [sic] spend several hours trying to convince Mr. Allums to Kill [sic] E.C. Police officers as the Agent glared at them and their vehicles as they drove by." (*Id.* at 16.) Finally, Plaintiff alleges that the federal government "did send agent 'Mike Tu' of china [sic] in an attempt to convince Mr. Allums to overthrow America." (*Id.* at 18.) The government also allegedly "dispense[d] two Studio terrorists 'Anu Et E El' who stated that he was there to fight the white man calling him 'a mad, mad man' . . . followed by 'The Great King Lemur' who complimented Mr. Allums about his prediction of rioting if republican [sic] is elected in 2008 then stating, 'We want it to happen'.[sic]" (*Id.*)

In his second, fifth, and eighth claims, Plaintiff alleges violations of his constitutional rights. One source of these constitutional infringements appears to be an interaction with an automobile driver in El Cerrito, California. (*Id.* at 10.) Plaintiff claims that "motorist J. Gonzalez, working under the cover of sub-contractor to these agents, did attempt to run over Mr. Allums with what

4

1 according to Mr. Allums was 'A big as[s] Car.'" (*Id.*) Plaintiff then goes on to describe a physical
2 altercation in which Gonzalez "took a Russian Martial Arts stance" and struck Plaintiff in the solar-
3 plexus. (*Id.*)

4 Plaintiff claims that the near collision was a racially motivated attempt on his life constituting
5 a hate crime because "the attacker mentioned statements that appeared to be racist, and used a legal
6 weapon (Martial Arts)." (*Id.*) Plaintiff alleges violations of due process and civil rights by the local
7 police, who "working in cohorts, or due to lack of professionalism, did purposefully and
8 immediately write a report misstating numerous facts insuring that Gonzalez could never be charged
9 or sued." (*Id.*) This report was followed by a second report "filled with accusations and lies," that
10 deprived another citizen the right to testify as a witness to the event. (*Id.*)

11 In his fifth claim, Plaintiff describes a second incident involving alleged inaction by the local
12 police. (*Id.* at 15.) Plaintiff claims that he received a death threat via cellular text message, but that
13 "no charges [were] ever filed against assailant . . . they ma[de] him file a domestic abuse complaint."
14 (*Id.* at 15.) An attached Berkeley Police report related the content of the text message and stated,
15 "Allums told me that he did not feel that the threat was credible nor was he in fear of loosing [sic]
16 his life. Allums just wanted the issue documented." (*Id.* at 33.)

17 Also in his fifth claim, Plaintiff alleges that he has been the target of drone surveillance and
18 attacks at the hands of government agents. (*Id.* at 15.) Plaintiff alleges that the federal government
19 sent a "poorly trained Agent to Tully's coffee shop to threaten him. He looked into Mr. Allums [sic]
20 eyes and clearly stated, 'You know soon they will be killing Americans with Drone Airplanes,'"
21 soon after which agents "did follow up on the threat by ordering the execution of airborne devices
22 that flow [sic] close to Mr. Allums [sic] head on four separate occasions, at a speed he estimates to
23 be four to five times the speed of a car going 80 MPH." (*Id.*) Although Plaintiff saw "just some
24 blur," he was forced to "instinctively duck and occasionally hit the ground" near the El Cerrito High
25 School at night and while walking near BART tracks in Albany, California. (*Id.*)

26 Finally, Plaintiff alleges a longstanding pattern of harassment by the federal government
27 throughout his Complaint. In his fourth claim, titled "Destruction of Property, General Theft,"
28 Plaintiff alleges that the federal government stole his "creative works and manuscripts." (*Id.* at 14.)

5

In his sixth count, Plaintiff claims that in 2002 and 2003, he "blew the whistle on a group of economic terrorists, based in the U.S. including Politicians as well as businessmen who were planning to collapse the U.S. economy followed by the world's economy." (*Id.* at 19.) Plaintiff contends that when he took his predictions about the collapse to the media, "agents, knowing this to indeed be about to occur, intensified physical and emotional harassment making a would be hero a permanent villain." (*Id.*)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976 (9th Cir. 2012) (internal quotation marks and citation omitted). For the Court to exercise proper subject matter jurisdiction over an action, the parties must have standing. *Nat'l Wildlife Fed'n v. Adams*, 629 F.2d 587, 593 n.11 (9th Cir. 1980); *see also Warth v. Seldin*, 422 U.S. 490, 517-18 (1975) ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."). "[T]he standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify the exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498–99 (internal quotation marks omitted).

Even if a plaintiff adequately alleges standing, a complaint may still be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A complaint fails to state a claim upon which relief may be granted if the plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a court should dismiss a complaint for failure to state a claim if, taking all factual allegations as true, it

6

does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 662; *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (internal quotation marks omitted).

Under 28 U.S.C. § 1915, the Court has a continuing duty to dismiss any case in which a party is proceeding *in forma pauperis* if the Court determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact."). Upon dismissal, pro se plaintiffs proceeding *in forma pauperis* must be given leave to "amend their complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Franklin v. Murphy*, 745 F. 2d 1221, 1235 n.9 (9th Cir. 1984) (internal citations and quotation marks omitted); *Lopez v. Smith,* 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988); *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963); 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948).

**DISCUSSION**

**I.     Standing**

Federal Rule of Civil Procedure 12(b)(1) addresses the Court's subject matter jurisdiction. For the Court to find proper subject matter jurisdiction, a plaintiff must have "standing;" that is, a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical,'" Lujan *v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). Although pro se pleadings are construed liberally, pro se litigants are nonetheless bound by the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). "When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes

1 concerning the existence of jurisdiction." *F.D.I.C. v. Nichols*, 885 F.2d 633, 635-36 (9th Cir. 1989)
2 (internal quotation marks omitted).

3     A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim
4 to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).
5 "The Art. III judicial power exists only to redress or otherwise to protect against injury to the
6 complaining party, even though the court's judgment may benefit others collaterally." *Id.* While
7 there is an exception to this rule, courts "have limited this exception by requiring that a party seeking
8 third-party standing make two additional showings. First, we have asked whether the party asserting
9 the right has a 'close' relationship with the person who possesses the right. Second, we have
10 considered whether there is a 'hindrance' to the possessor's ability to protect his own interests."
11 *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004).

12     As described above, Plaintiff seeks to bring his first claim on behalf of all minority women
13 and children in an unspecified area, claiming that their legally protected rights to be free from sexual
14 assault have been infringed. He also wishes to bring his seventh claim on behalf of an individual,
15 Mr. Gomez, who Plaintiff alleges was denied his constitutional right to act as a witness to a crime.
16 (Dkt. No. 1 at 21.) These claims fail, however, because Plaintiff has alleged sexual harassment of
17 other persons not party to the suit, and thus as a third party lacks standing to bring such a claim.
18 Without a legally cognizable harm to Plaintiff, or facts suggesting that he has a "close" relationship
19 to the victims or that they are "hindered" from bringing such claims themselves, the court must
20 dismiss the claim for lack of subject matter jurisdiction. *Warth*, 422 U.S. at 499 ("A federal court's
21 jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or
22 actual injury resulting from the putatively illegal action.") (internal citations omitted). Therefore, the
23 Court must dismiss claims one and seven, which are lodged on behalf of minority women and
24 children in Berkeley, California, and "Witness Gomez" respectively, under Rule 12(b)(1).

25     In addition, Plaintiff alleges that local police, foreign agents, and agents of the federal
26 government repeatedly approached him attempting to induce him to commit crimes. However, he
27 claims that he did not actually commit any of the proposed crimes. Because Plaintiff did not suffer
28 any cognizable harm as a result of the alleged conversations, he has failed to allege standing, and the

1 Court should therefore dismiss his so-called entrapment claims (his second, third, fifth, and sixth
2 claims) under Rule 12(b)(1).

### II. Civil Rights Infringements And Claims Involving Persons Who Are Not Parties To This Action

Plaintiff's Complaint appears to base Defendant's liability, at least in part, on the wrongful actions of non-parties.

Specifically, Plaintiff alleges that Defendant entered into a conspiracy to harass him, abuse him, and to create fraudulent police reports via the local police that allow an attacker to go unpunished. Regarding Plaintiff's claims that Universal Studios "stole his life story," he alleges that the federal government, "knowing of this crime, did assist the suspect as they did harass, intimidate and threaten Mr. Allums while Universal/NBC was allowed to profit without shame or financial consequence." (Dkt. No. 1 at 12.) These allegations fail because they are conclusory. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions."). Plaintiff's Complaint does not adequately allege a connection between the conduct of the non-parties and Defendant's allegedly harassing and abusive actions.

Because Plaintiff fails to allege facts that support his bare conspiracy allegations, claims one, five, and seven must be dismissed.

### III. Harassment, Theft, and Use of Drones

Plaintiff's allegations of government harassment and surveillance are extensive. In addition to multiple claims of harassment and drone surveillance, Plaintiff alleges that in 2009 "a Hispanic U.S. federal agent, whose disguise was a patch over his eye, in response to Mr. Allums [sic] complaint about Universal/NBC did send multiple viruses destroying over 13 computers, external hard drives as well as USB drives." (Dkt. No. 1 at 14.) More broadly, Plaintiff alleges that agents sent viruses to destroy his creative works, manuscripts, documents, and evidence, dating as far back as an incident in which "agents broke into Mr. Allums [sic] Bedroom [sic] on several occasions stealing/removing numerous documents in relation to his best friend when he was age 16 including her pictures as well as other evidence." (*Id.*) When describing instances of harassment more

broadly, Plaintiff cites "coughing," "laugh[ing]," and "star[ing]" strangers as proof that federal agents are spying on him at local coffee shops. (*Id.*)

Claims that a government agency, which Plaintiff never explicitly identifies as DHS in the body of his complaint, has expended considerable time and effort to track his movements, steal documents and information from his personal computer, and attempt to injure him with drone strikes, comprise fanciful allegations pursuant to section 1915(d). *Cf. Manco v. Does*, 2009 WL 2356175 (D. Kan. July 29, 2009) *aff'd* 363 F. App'x 572 (10th Cir. 2010) (dismissing as frivolous a plaintiff's claims that various government and prison officials had used an implanted device to control and spy on him); *Payne v. Contra Costa Sheriff's Dep't*, 2002 WL 1310748 at *1 (N.D. Cal. June 10, 2002) (dismissing prisoner's complaint alleging that the sheriff's department used telepathy and mind control to allow third parties to see his memories). Further, Plaintiff alleges no facts that support his conclusory assertions that government agents are sabotaging his computer hardware, burgling his residence, and unlawfully surveilling him. The Court, therefore, must dismiss claims four, five, six, and eight.

## CONCLUSION

Because Plaintiff has improperly made claims on behalf of others, failed to plead DHS' liability for the wrongdoing of non-parties, and described factual allegations that are wholly incredible and unsupported by factual assertions, the Court DISMISSES his complaint with leave to amend.

Plaintiff's amend complaint, if any, shall be filed by September 13, 2013. Plaintiff shall clearly label each of his alleged causes of action if he chooses to amend his complaint.

**IT IS SO ORDERED.**

Dated: August 14, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE